UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA WILLIAMS,

    *Plaintiff,*

v.

AT&T SERVICES INC.,

    *Defendant.*

_____

CASE No.: _____

HON. _____

BRENDA R.WILLIAMS (P36769)
THE LAW OFFICE OF BRENDA R. WILLIAMS, PLLC
Attorney for Plaintiff
2702 Flushing Road
Flint, MI 48504
(810) 767-6655
attybrw821@gmail.com

_____

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff Sonya Williams, files this Complaint against Defendants AT&T, and respectfully states the following:

## PARTIES

1. Plaintiff resides in the Eastern District of Michigan and is a citizen of Michigan.

2. Defendant AT&T SERVICES INC. ("Defendant" or "AT&T") is a corporation doing business in the Eastern District of Michigan, and the unlawful employment practices giving rise to Plaintiff's claims occurred in this judicial district.

3. "AT&T" is a for-profit corporation incorporated under the laws of the state of Delaware. "AT&T" is licensed to, and does, transact business in Michigan.

4. "AT&T" may be served with process via its registered agent: THE CORPORATION COMPANY, 40600 ANN ARBOR RD. E STE 201, PLYMOUTH, MI 48170.

5. At all times pertinent to this Complaint through Plaintiff's last day of work with "AT&T", "AT&T" was Plaintiff's employer, and Plaintiff was "AT&T's" employee within the meaning of the Civil Rights Act of 1964, as amended 2001, 42 U.S.C. § 2000e, et seq. (Title VII), and the Elliott-Larsen Civil Rights Act, MCLA 37.2101, et seq. ("ELCRA").

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically, 28 U.S.C.A. § 1331, and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights claims), Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e, et seq., 42 U.S.C. §§ 1981 and 1983.

7. This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. §1367 over Plaintiff's state law claims brought under Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA"), M.C.L.A. § 37.2101, et seq.

8. Venue is proper in the Eastern District of Michigan 28 U.S.C.A. § 1391(b) and (c).

9. The matter in controversy exceeds $100,000.00, exclusive of costs, interest and attorney fees.

10. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging continued discrimination on the basis of her race and age.

11. Plaintiff's Notice of Right to Sue was issued on January 9, 2024, and she has filed this complaint within 90 days of receiving her Notice of Right to Sue.

12. At all relevant times, Plaintiff was an employee until her last day of work, and Defendant was her employer, covered by and within the meaning of Title VII and ELCRA.

## GENERAL ALLEGATIONS

13. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

14. Plaintiff is an African-American woman and at the time of filing 59 years of age.

15. Prior to being employed by "AT&T", Plaintiff was employed as a Nurse with Hurley Medical Center in Flint, Michigan for eleven years.

16. Plaintiff had previous management experiences at Chase Bank, Healthsource-Providence and Hurley Medical Center.

17. Plaintiff commenced her employment with Defendant as a Service Representative on or about July 25, 2001.

18. At all times relevant hereto, Plaintiff performed her job diligently and competently as a Service Representative.

19. During 2020. and until she constructively retired in 2022, Plaintiff met and exceeded her job expectations at AT&T.

20. Plaintiff, however, was never promoted in the 21 years that she worked for Defendant.

21. Plaintiff first complained that she was passed over for promotion due to discrimination in 2018.

22. From 2020-until she constructively retired in 2022 Plaintiff continued to apply for roles despite Defendant failing to interview Plaintiff for positions she was qualified for.

23. Plaintiff complained of discrimination and Defendant failed to investigate further.

**24.**     Plaintiff complained to her immediate manager Defendant's agent, Sherri Breternitz-Prebay ("Breternitz-Prebay"), numerous times about being passed over for promotion

**25.**     Plaintiff was specifically asked by Breternitz-Prebay not to report her complaints to the Equal Employment Opportunity Commission.

**26.**     It was Defendants affirmative duty under its policies to investigate discrimination that is reported to managers or through other avenues of reporting.

**27.**     The Defendant had access to all necessary documents to investigate Plaintiffs claims of hiring (race and age) discrimination.

**28.**     On several occasions Plaintiff was required to train the newly promoted employee who was given the position over her.

**29.**     Specifically, Plaintiff applied for a Sales Coach position on or about February 25, 2022.

**30.**     The position was filled in April 2022 by John Montoya, a Hispanic male who was 27 years of age at the time.

**31.**     Plaintiff complained about discrimination to Defendant regarding Defendant's agent, Breternitz-Prebay, the manager Plaintiff reported to.

**32.**     The investigation into Plaintiff's concerns regarding "Breternitz-Prebay" engaging in hiring discrimination resulted in the individual who was promoted over Plaintiff, John Montoya, being transferred from the department as stated by Breternitz-Prebay.

**33.**     Defendant's agents made employment decisions based on age and race.

**34.**     Similarly in 2018, Plaintiff previously reported that Sales Manager Valerie Sebastian told her that Breternitz-Prebay passed her over for promotion for a younger Hispanic employee Micheal Gonzalez.

35. Plaintiff filed an anonymous internal complaint for hiring discrimination because Micheal Gonzalez ("Gonzalez") a Hispanic male was selected over her.

36. Gonzalez had only been at work for 2 months after sick leave and was only required to meet 50% of his goals.

37. In comparison to Plaintiff who was never given the opportunity to not meet her goals because of leave.

38. Gonzalez was promoted over Plaintiff who had worked hard for 17 years.

39. Plaintiff reported the matter disclosed to her by Sales Manager Valerie Sebastian "Sebastian" to Human Resources.

40. Sebastian called Plaintiff into her office and accused her of being the anonymous reporter.

41. Sebastian retaliated against Plaintiff for filing a complaint by stating she spread a rumor about her manager Breternitz-Prebay.

42. Sebastian told Plaintiff she heard from sources that Plaintiff put out a rumor about her boss sleeping with Micheal Gonzolez and that she was bringing down the morale of the department.

43. Sebastian was investigated and removed from the department.

44. Defendant promoted "Breternitz-Prebay" after removing the Director Valerie Sebastian, further alienating Plaintiff and co-signing Breternitz-Prebay's behavior.

45. Breternitz-Prebay was promoted over the Saginaw, Michigan AT&T site.

46. This was the beginning of unrelenting retaliation against Plaintiff.

47. She would never be promoted in the following years that she worked for Defendant.

48. Defendant's agent Breternitz-Prebay would continue to "gaslight" Plaintiff into believing if she worked harder she would get a promotion.

49. Defendant had no intention of Promoting Plaintiff, and in fact Plaintiff was never promoted.

50. Plaintiff continued to report she was being discriminated against due to defendants internal hiring practices, *inter alia*.

51. Plaintiff went on leave because she could no longer bear the obvious discrimination.

52. Plaintiff's health suffered due to her treatment by Defendant and its agents and she has retired early because of the treatment she endured.

53. Plaintiff complained to the EEOC regarding the discrimination she experienced while working for Defendant and filed this lawsuit.

## COUNT I
## SECTION 1981 INTENTIONAL DISCRIMINATION

54. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

55. Plaintiff and Defendant were parties to an oral contract of employment under which, *inter alia*, Plaintiff worked for Defendant and compensated her for her work.

56. Plaintiff performed her contractual obligations by, inter alia, working for Defendant.

57. It is unlawful for Defendant to discriminate against Plaintiff in the making or enforcement of contracts with her.

58. Defendant's intentionally discriminatory actions caused Plaintiff to suffer lost compensation and other benefits of employment, emotional distress, inconvenience, humiliation, and other indignities.

59. Defendant acted with malice towards Plaintiff, authorizing an award of punitive damages.

60. Additionally, and in the alternative, Defendant acted with reckless disregard for Plaintiff's federally protected rights, authorizing an award of punitive damages.

61. Plaintiff was Black and that was the reason Plaintiff not receiving a single promotion in her 20 plus year tenure with defendant.

62. Defendant intentionally discriminated against Plaintiff and because of her race.

63. Defendant also treated Plaintiff differently than similarly situated non-protected employees by writing her up when she applied to positions so she would not be eligible for promotion.

64. Micheal Gonzalez was only required to meet 50% of his goals after a sick leave.

65. In comparison to Plaintiff who after taking a leave was never given the opportunity to not meet her goals because she had come back from leave.

66. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## COUNT II

## <u>VIOLATION OF ADEA AGAINST DEFENDANT</u>

67. Age Discrimination in Employment Act of 1967 (ADEA), protects individuals who are 40 years of age or older.

68. Plaintiff is 58 years old.

69. Plaintiff was qualified for the Sales Coach Position she applied for in February and was interviewed as a qualified applicant.

70. The plaintiff was not selected and was denied the promotion.

71. When Plaintiff asked Defendant why she was not selected, Breternitz-Prebay told Plaintiff she debated the selection but decided she needed "New Blood" in the department.

72. The promotion was given to John Montoya who was 27 years of age. Over *30 years* younger than Plaintiff.

73. Defendants, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated younger employees in the terms and conditions of employment, based on unlawful consideration of age.

74. Defendants' actions were intentional in disregard for Plaintiff's rights and sensibilities.

75. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## COUNT III

## <u>VIOLATION OF TITLE VII AGAINST DEFENDANT</u>

76. Plaintiff incorporates the above allegations by reference.

77. Plaintiff was employed by Defendant AT&T at all relevant times.

78. Title VII prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment because of the employee's race. <u>42 USC 2000e-2(a)(1)</u>.

79. Plaintiff was qualified for the positions she applied to during the relevant time period.

80. Defendant AT&T, through its agent, Defendant Sherri Breternitz-Prebay, treated Plaintiff differently than similarly situated non-protected employees.

81. Plaintiff was treated poorly and held to a different standard compared to than similarly situated non-protected employees.

82. For example, similarly situated non-protected employees were not held to the same standards as Plaintiff and were promoted when they had attendance problems or were not qualified.

83. Micheal Gonzalez was only required to meet 50% of his goals after a sick leave.

84. In comparison to Plaintiff who after taking a leave was never given the opportunity to not meet her goals because she had come back from leave.

85. Defendant also treated Plaintiff differently than similarly situated non-protected employees by writing her up when she applied to positions so she would not be eligible for promotion.

86. Plaintiff's peer Heather Farr (White, Female), was not required to meet the same standards as other sales representatives but was promoted to a manager.

87. Plaintiff was passed over for promotion despite meeting required standards.

88. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## COUNT IV
### RETALIATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT

89. Plaintiff incorporates the above allegations by reference.

90. Plaintiff was employed by Defendant AT&T at all relevant times.

91. Title VII prohibits employers from retaliating against an employee because of the employee's opposition to "any practice made an unlawful practice" by Title VII, or the employee's participation in "an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. §2000e-3(a).

92. Plaintiff opposed race discrimination during her employment including, but not limited to, when she complained of discrimination in consistently during her time with AT&T

93. Plaintiff was retaliated against by Defendant GCRC for engaging in protected activity under Title VII.

94. Plaintiff was never selected for promotion after her complaint of hiring discrimination against Sherri Breternitz-Prebay.

95. Sherri Breternitz-Prebay was the decision maker for the Sales Coach promotion.

96. Plaintiff was retaliated against by Defendant through its agents scrutinizing Plaintiff's work, constantly ridiculing her and excluding her for promotional opportunity.

97. Plaintiff complained to Defendant to no avail.

98. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

### COUNT V

### AGE DISCRIMINATION IN VIOLATION OF ELCRA AGAINST DEFENDANT

99. Plaintiff incorporates the above allegations by reference.

100. Plaintiff's age was at least one factor that made a difference in Defendants' decision not to promote Plaintiff treating her differently than similarly situated non-black employees.

101. Had Plaintiff not been older, she would not have been treated in the manner described.

102. Defendants, through its agents, representatives, and employees, was predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

103. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated younger employees in the terms and conditions of employment, based on unlawful consideration of age.

104. Defendants' actions were intentional in disregard for Plaintiff's rights and sensibilities.

105. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## COUNT VI

**<u>CONSTRUCTIVE DISCHARGE IN VIOLATION OF ELCRA AGAINST DEFENDANT</u>**

106. Plaintiff incorporates the above allegations by reference.

107. Plaintiff resigned due to intolerable working conditions created by the Defendant.

108. Plaintiff was in a Hostile and Abusive Work Environment.

109. Plaintiff complained of discrimination against Breternitz-Prebay and the result was that Breternitz-Prebay was promoted.

110. Breternitz-Prebay was able to block Plaintiff's advancement and tell others that Plaintiff was a poor performer.

111. Defendant hired a third party to surveil Plaintiff to determine if she was performing poorly.

112. This was humiliating to Plaintiff and she had to seek medical help to deal with the stress and humiliation she experienced daily at work.

113. The investigation determined Plaintiff was performing but that did not matter because she would never have the opportunity to be promoted.

114. Plaintiff had no real opportunity for advancement after complaining about discrimination.

115. Plaintiff was constantly being labeled as a poor performer although she was not.

116. Plaintiff suffered micro-aggression from Breternitz-Prebay daily.

117. After she was not promoted, Breternitz-Prebay asked Plaintiff did she still own her home.

118. Breternitz-Prebay told Plaintiff she was not selected for a position because Defendant wanted "New Blood."

119. Plaintiff was being discriminated against daily with micro-aggressions, manipulation, and games from Breternitz-Prebay being told that she was basically an "Angry Black woman".

120. Plaintiff went on medical leave a seeking medical help for the stress she was experiencing due to her work environment.

121. Plaintiff's doctor told her she must resign or the stress from continuing to work in such an intolerable environment would kill her.

122. Plaintiff retired a decade earlier than she intended involuntarily effective July 9, 2022.

123. This was a direct and proximate result of Defendant and it's agents' unlawful actions against Plaintiff as described.

124. Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## COUNT VII

**RACE DISCRIMINATION IN VIOLATION OF ELCRA AGAINST DEFENDANT**

125. Plaintiff incorporates the above allegations by reference.

126. Plaintiff was qualified for the positions she applied to during the relevant time period.

127. Defendant AT&T, through its agent, Sherri Breternitz-Prebay, treated Plaintiff differently than similarly situated non-protected employees.

128. Plaintiff was treated poorly and held to a different standard compared to than similarly situated non-protected employees.

129. For example, similarly situated non-protected employees were not held to the same standards as Plaintiff and were promoted when they had attendance problems or were not qualified.

130. Defendant also treated Plaintiff differently than similarly situated non-protected employees by writing her up when she applied to positions so she would not be eligible for promotion.

131. Plaintiff's peer Heather Farr (White, Female), was not required to meet the same standards as other sales representatives but was promoted to a manager.

132. Plaintiff was passed over for promotion despite meeting standards required.

133. Defendants, through its agents, representatives, and employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

134. Defendants, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated non-protected employees in the terms and conditions of employment, based on unlawful consideration of race.

135. Defendants' actions were intentional in disregard for Plaintiff's rights and sensibilities.

136. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## COUNT VIII

## **RETALIATION IN VIOLATION OF ELCRA AGAINST DEFENDANTS**

137. Plaintiff incorporates the above allegations by reference.

138. Plaintiff complained of Race discrimination.

139. This was known by the Defendant and its Agent decision maker Sherri Breternitz-Prebay.

140. Plaintiff was never selected for promotion after her complaint of discrimination against her boss.

141. Sherri Breternitz-Prebay was the decision maker for the Promotion for Sales Coach in February of 2022.

142. Complaints of race discrimination constitute activity protected under the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

143. Plaintiff's complaints to the Defendant regarding discrimination constitute protected activity under ELCRA.

144. Defendants and its agents have retaliated against Plaintiff for opposing violations of the Elliott-Larsen Civil Rights Act in violation of the Act.

145. Defendants' retaliation includes, but is not limited to, failure to promote Plaintiff, scrutinizing Plaintiff's work, and constantly ridiculing her.

146. Defendants also eliminated the Department in which Plaintiff worked shortly after Plaintiff filed an EEOC charge.

147. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## **RELIEF REQUESTED**

For all of the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

1. Defendant to create and abide by a Diversity, Equity and Inclusion plan for all employees to combat Systemic Racism and Hiring Discrimination at Defendant;

2. Monitoring of Defendants employment practices;

3. Back pay, front pay and damages in whatever amount Plaintiff is found to be entitled;

4. Attorney's fees and court costs;

5. Compensatory damages including but not limited to mental and emotional distress, humiliation, embarrassment, loss of ordinary pleasures and other compensatory damages in whatever amount Plaintiff is found to be entitled;

6. Exemplary and punitive damages in whatever amount Plaintiff is found to be entitled; and

7. All other relief to which Plaintiff is entitled.

Respectfully submitted,
**The Law Office of Brenda R. Williams, PLLC**

Brenda R. Willaims (P36769)
2702 Flushing Road
Flint, MI, 48504
(810) 577-0536
attybrw821@gmail.com

April 1, 2024

 **E-mail:/ E-service: attybrw821@gmail.com**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA WILLIAMS,

    *Plaintiff,*

CASE No.: _____

v.

HON. _____

AT&T SERVICES INC.,

    *Defendant.*
_____

BRENDA WILLIAMS (P36769)
THE LAW OFFICE OF BRENDA R. WILLIAMS, PLLC
Attorney for Plaintiff
2702 Flushing Road
Flint, MI, 48504
(810) 767-6655
(810) 577-0536 – cell
attybrw821@gmail.com
_____

## JURY DEMAND

    Plaintiff, SONYA WILLIAMS demands a jury trial on all issues.

                    Respectfully submitted,
                    **The Law Office of Brenda R. Williams, PLLC**

.

                    _/s/ Brenda R. Williams_
                    BRENDA R. WILLIAMS
                    State Bar No. P36769
                    THE LAW OFFICE OF BRENDA R. WILLIAMS, PLLC
                    2702 Flushing Road
                    Flint, MI, 48504
                    (810) 577-0536
                    attybrw821@gmail.com

April 1, 2024

 **E-mail:/ E-service: attybrw821@gmail.com**