UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA WILLIAMS,

        Plaintiff,

v.

AT&T SERVICES, INC.,

        Defendant.

_____/

Case No. 2:24-cv-10840

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART MOTION FOR SUMMARY JUDGMENT [31]

After working for twenty years with AT&T in Saginaw, Michigan, Sonya Williams, an African American woman, applied for a sales coach position at the Saginaw office. She was 57 years old when she applied. *See* ECF No. 31-2, PageID.308. But AT&T passed over Williams for a less experienced, 27-year-old Hispanic male from Florida because AT&T wanted "new blood" in the office. ECF No. 31-2, PageID.320. Williams then sued AT&T  and alleged that it engaged in age and race discrimination and retaliation in violation of federal and state law. ECF No. 1. At the close of discovery, AT&T moved for summary judgment. ECF No. 31.

AT&T is entitled to summary judgment on almost every claim. Many of the claims are time-barred, and the undisputed facts do not demonstrate that AT&T engaged in racial discrimination or retaliation. The Court, however, cannot grant summary judgment on the state law age discrimination claim. A reasonable jury could find that AT&T passed over Williams over for a less qualified candidate and

1

that the "new blood" comment is probative evidence of age discrimination. The Court will thus grant AT&T's motion in part and deny it in part.[1]

## BACKGROUND

Starting in 2001, Sonya Williams worked as a service representative at an AT&T call center in Saginaw, Michigan. ECF No. 31-2, PageID.310. There, she fielded calls from small businesses. *Id.* She answered their questions and offered them AT&T products and services. *Id.* Representatives like Williams would "answer billing questions, process any orders, and then if it's something outside of their scope they would transfer [the call]." ECF No. 31-4, PageID.367. Williams did not assist residents—just small businesses. ECF No. 31-2, PageID.310–311.

Over the years, Williams applied for "a lot" of different positions but was continuously rejected. *See id.* at PageID.329. As someone who was "always in the top 10 percent" for sales, Williams found the constant rejection to be humiliating. *Id.* at PageID.316.

On February 11, 2022, after more than twenty years at the Saginaw office, Williams applied for a sales coach position in the office. *Id.* at PageID.313, 329. At the time, she was 57 years old. *See* ECF No. 31-2, PageID.308. AT&T interviewed only two candidates for the position—Williams and Jhon Montoya. *Id.* at PageID.313.

---

[1] Based on the parties' briefing, the issues are clear. Accordingly, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2); Practice Guidelines for Judge Stephen J. Murphy, III.

Montoya is a Hispanic male. ECF No. 31-4, PageID.382. And it is undisputed that he was 27 years old when he was interviewed. *See* ECF No. 1, PageID.4.

Williams was interviewed by Sherri Breternitz-Prebay and another associate director. ECF No. 31-2, PageID.313. At the time, Prebay was the senior manager of the Saginaw call center. *Id.*

According to Williams's job application, after she attended the University of Tennessee, Williams worked at AT&T for more than two decades. ECF No. 31-6. At AT&T, Williams met her "monthly quota 100 percent or above," passed AT&T "leadership supervisor classes," and completed several certifications. *Id.* at PageID.409–410. She was "always in the top 10 percent" of sales. ECF No. 31-2, PageID.316. And she sometimes made so many sales that she maxed out her commissions. *Id.* at PageID.317.

Williams also performed "team-lead" responsibilities in the Saginaw office. ECF No. 31-4, PageID.386. She trained coworkers and helped them make sales. ECF No. 31-2, PageID.317. On the job, Williams "was a very strong performer" with "great sales and was top of the team." ECF No. 31-4, PageID.373. But "she struggled with maybe the way she spoke to a customer." *Id.* And at times, her tone "was maybe getting a little negative." *Id.*

Meanwhile, according to Montoya's job application, he earned an associate's degree from Broward Community College and had worked at AT&T for eight years in Florida. ECF No. 31-7, PageID.416–417. He fielded calls from residential customers, and thus—unlike Williams—he lacked experience working with small

3

businesses. ECF No. 31-4, PageID.381–382. During one of Montoya's years at AT&T, he generated $154,000 or 120.26% in average billed revenue, added 750 new broadband subscribers (116% of target), and added 368 new TV subscribers (110% of target). ECF No. 31-7, PageID.417.  Montoya was a sales consultant from 2014–2022 and a sales coach from 2021–2022. *Id.* at PageID.421.

But Montoya had issues as an employee at AT&T. He accrued five write-ups for attendance problems. ECF No. 33-2, PageID.527 (8/28/20); ECF No. 33-3, PageID.530 (1/8/21); ECF No. 33-4, PageID.533 (6/1/21); ECF No. 33-5, PageID.536 (6/24/21); ECF No. 33-6, PageID.539 (8/9/21). And he was disciplined in February 2022 for "inappropriately transferring customers to other departments." ECF No. 33-7, PageID.542. As a result, AT&T issued Montoya "a Warning for Gross Customer Abuse/Customer Treatment." *Id.* By contrast, in her twenty years at AT&T, Williams never received any discipline for her performance. ECF No. 31-2, PageID.324. Though she received a single discipline for attendance in 2015, it was ultimately overturned. *Id.*

Ultimately, Prebay chose Montoya over Williams. ECF No. 31-4, PageID.383. Prebay testified that she chose Montoya because of his interview, his passion for sales, and his excellence with mobility service sales. ECF No. 31-4, PageID.383–384. But, according to Williams, Prebay said the "only reason" she did not get the job "was because [Prebay] wanted new blood." ECF No. 31-2, PageID.320.

Williams also believed that the company did not promote her in retaliation for events that occurred back in 2018. That year, somebody in the Saginaw office made

4

an anonymous EEO complaint about harassment. ECF No. 31-2, PageID.332. AT&T management suspected that Williams made the EEO complaint, and they asked her about it during an "uncomfortable" meeting. *See id.* Even though Williams did not make the EEO complaint, she was interviewed as part of the EEO investigation. *Id.* After the uncomfortable meeting, Williams filed HR retaliation charges against AT&T manager Valerie Sebastian (who was at the meeting) and Prebay (who was not at the meeting, but whose name came up). *Id.* at PageID.330, 332, 337.

Fast forward several years, Williams began a medical leave of absence on April 19, 2022, soon after Montoya started at the Saginaw office. ECF No. 31-2, PageID.314. While she was on leave, Williams made the decision to retire from AT&T. *Id.* at PageID.315. And in June 2022, she texted Prebay about her plans to retire. *Id.* Williams's plan was to finish out her short-term disability, use some vacation days, and retire from AT&T on July 9, 2022. *Id.* Ultimately, she did retire in July 2022. ECF No. 31-10, PageID.434.

On February 9, 2023, Williams filed a discrimination charge with the EEOC. ECF No. 31-8, PageID.424. She alleged the following:

> Throughout my employment, I applied for numerous promotional positions and was never selected. I complained to management and human resources several times that I was being denied opportunities because of my race and age but nothing was done. In or around April 2022, I applied for the Sales Coach position. I was not selected. Instead, my employer selected a lesser qualified employee who was Hispanic and much younger than me. Again, I complained to management and human resources but received no assistance. Due to the continued discrimination, I ended my employment in or around July 2022.

*Id.* On January 4, 2024, the EEOC issued a right to sue letter, ECF No. 31-9, PageID.428, and Williams filed her complaint on April 1, 2024 and included eight claims under federal and state law, ECF No. 1.

## LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the Court considers a summary judgment motion, it must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

**DISCUSSION**

Williams brought four federal claims against AT&T: racial discrimination in violation of 42 U.S.C. § 1981, age discrimination in violation of the Age Discrimination in Employment Act (ADEA), racial discrimination in violation of Title VII, and retaliation in violation of Title VII. ECF No. 1, PageID.6–11. She also brought four claims against AT&T for violations of Michigan's Elliott-Larsen Civil Rights Act (ELCRA): age discrimination, constructive discharge, racial discrimination, and retaliation. *Id.* at 11–15. At the close of discovery, AT&T moved for summary judgment on all claims. ECF No. 31. For the reasons below, AT&T is entitled to summary judgment on every claim except for Williams's age discrimination claim under the ELCRA.

I.      ADEA and Title VII Claims

*First*, AT&T argued that Williams's Title VII and ADEA claims are time-barred because she did not file a charge with the EEOC within 300 days of any alleged unlawful employment practice. ECF No. 31, PageID.285. The Court agrees.

Title VII requires plaintiffs to file a charge with the EEOC within 180 or 300 days of any alleged unlawful employment practice, depending on whether the employee filed a grievance with a state agency similar to the EEOC. 42 U.S.C. § 2000e–5(e)(1). The ADEA has similar time limits. 29 U.S.C. § 626(d).[2] Claims that

_____

[2] To be precise, § 626(d)(1)(B) of the ADEA provides that, "in a case to which section 633(b) of this title applies, [a charge shall be filed] within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." Thus, the outermost time for a plaintiff to file a claim is 300 days after the unlawful practice.

are not filed within the time limit are barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (Title VII); *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) (ADEA).

Here, the parties agree that the 300-day window applies. *See* ECF No. 31, PageID.286. Williams filed her charge with the EEOC on February 9, 2023. ECF No. 31-8, PageID.424–425. Because 300 days before February 9, 2023 is April 15, 2022, Williams can only sue regarding events that occurred on or after April 15, 2022. But Williams's Title VII and ADEA claims all concern failures to promote or other employment actions that occurred *before* April 15, 2022. *See* ECF No. 1, PageID.8–11. ECF No. 31-2, PageID.313–314, 329.

Williams argued, without citation, that her allegations constitute "continuing actions" and, thus, are not time-barred. ECF No. 33, PageID.509. But the Supreme Court has rejected that approach. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113. That includes failure to promote claims because a failure to promote is considered a discrete act. *Id.* at 114.

Of course, the timing for other claims can be more complicated. For example, the statute of limitations for a constructive discharge claim runs from when an employee resigns. *Green v. Brennan*, 578 U.S. 547, 554 (2016). Constructive discharge refers to situations when employer discrimination is so bad that a reasonable employee would feel compelled to quit. *Id.* at 555. With that type of claim, an employee may be able to sue over discriminatory acts (like a demotion) that fall

8

outside the limitations period, so long as the ultimate resignation falls inside the limitations period. *See id.* at 571 (Alito, J., concurring).

Here, Williams did not bring a constructive discharge claim under federal law. *See* ECF No. 1. Rather, the only explicit constructive discharge "claim" in the case is under ELCRA. *Id.* at PageID.12–13; *see also* ECF No. 32, PageID.455 (arguing that "Plaintiff's *ELCRA claim* shouldn't be reduced to one single event in time because she continued to oppose hiring discrimination even after her constructive retirement" (emphasis added)).

But even assuming that Williams is trying to proceed on a constructive discharge theory on her federal claims under Title VII and the ADEA, she would not be able to. She did not allege facts that, if true, would show that the conditions were intolerable. *See infra* § III.

*Green v. Brennan*, 578 U.S. 547, 554 (2016) is instructive. Green, a postal worker, brought a constructive discharge claim based in part on the fact he was passed over for a promotion because of his race. 578 U.S. at 550. Afterward, he complained that his supervisors started a retaliation campaign. According to Green, they accused him of intentionally delaying the mail, which is a felony, and reported him to the Postal Service's Office of the Inspector General (OIG). Because of the subsequent OIG investigation, he was reassigned to off-duty status. The Postal Service then offered to drop the criminal charges if he either (1) resigned or (2) left his post in a Denver suburb for Wamsutter, Wyoming, a town of just 451 people, for a lower salary. Instead, Green resigned. *Id.* at 550–51. Based on those facts, the

9

Supreme Court permitted the worker to proceed on a constructive discharge theory for which the timeliness of the claim was measured from the date of his resignation.

Here, by contrast, Williams has no evidence of an ongoing campaign of discrimination or retaliation that forced her to resign. Her non-promotion in 2022 left her in the same position she was in before she applied, and no reasonable jury could find that the conditions of her employment were so bad that she was forced to resign. Thus, because Williams failed to point to any unlawful employment practice that occurred on or after April 15, 2022, her claims under Title VII and the ADEA are not timely and the Court must dismiss them.

II.      Section 1981 and ECRA Failure to Promote Claims

Next, the Court will move to the federal claim for intentional racial discrimination in violation of § 1981, the state law claim for racial discrimination in violation of the ELCRA, and the state law claim for age discrimination in violation of the ADEA. ECF No. 1. The focus of all three claims is on AT&T's failure to promote Williams in February 2022.

Williams filed her complaint on April 1, 2024. ECF No. 1. And the only position that Williams allegedly did not receive because of her age or race since April 2020 was the sales coach position that she applied for in February 2022. ECF No. 31-2, PageID.329. Williams's response to AT&T's motion for summary judgment did not mention any other actions by AT&T or its employees that occurred since April 2020, apart from the 2022 sales coach application. *See* ECF No. 32, PageID.448–454. Even if the claims could be understood to encompass older actions by AT&T, the applicable

statutes of limitation would bar the Court from looking at any of the older actions. *See Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 472 Mich. 263, 284 (2005), *as amended on denial of reh'g* (July 18, 2005) (holding that ELCRA has a three-year statute of limitations); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004) (holding that claims arising out of the 1991 amendment to § 1981 have a four-year statute of limitations). The Court will therefore focus its analysis on the sales coach position that Williams applied for in February 2022.

AT&T argued that Williams could not show that its reasons for hiring Montoya were pretexts for race or age discrimination. Though the Court agrees that Williams failed to submit evidence from which a reasonable jury could conclude that AT&T engaged in racial discrimination, she pointed to enough evidence such that a reasonable jury could conclude that AT&T engaged in age discrimination under the ELCRA. To explain why, the Court will first explain and apply the legal framework for failure to promote claims. Then, the Court will address some counterarguments by AT&T about Prebay's "new blood" comment.

### A. Legal Framework and Application

Discrimination cases can be proven by direct or indirect evidence. In an indirect evidence case, the familiar *McDonnell Douglas*[3] framework applies:

> [T]he plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established. The defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must identify evidence from which a reasonable jury

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

could conclude that the proffered reason is actually a pretext for unlawful discrimination.

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citations omitted). Here, because Plaintiff presented no direct evidence of discrimination, the Court will analyze both the federal and state claims under the *McDonnell Douglas* framework. *See* ECF No. 32; *see also Provenzano*, 663 F.3d at 818 ("Michigan has adopted the *McDonnell Douglas* analysis"); *DeFlaviis v. Lord & Taylor, Inc.*, 223 Mich. App. 432, 437 (1997) (holding that analogous federal precedent on Title VII is highly persuasive in ELCRA cases); *Kuhn v. Washtenaw County*, No. 10-11191, 2012 WL 1229890, at *6 n.3 (E.D. Mich. Apr. 12, 2012) (explaining that the standard for Title VII, § 1981, and ELCRA cases is the same), *aff'd*, 709 F.3d 612 (6th Cir. 2013).

To make out a prima facie failure to promote claim, the plaintiff must produce evidence that "(1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Provenzano*, 663 F.3d at 812–13. For the three above-mentioned claims for failure to promote, AT&T did not challenge Williams's showing on her prima facie case. *See* ECF No. 31. And Williams did not challenge the sufficiency of AT&T's purported legitimate, nondiscriminatory reason. *See* ECF No. 32. The sole dispute here concerns the final part of the *McDonnell Douglas* framework—whether AT&T's reasons are pretexts for unlawful racial or age discrimination.

12

Both parties agree that the Court should apply *Provenzano* for both the federal and state law claims. ECF No. 31, PageID.288–289; ECF No. 33, PageID.510–511. Williams's most forceful argument is based on her relative qualifications versus Montoya's. In *Provenzano*, the Sixth Circuit outlined two situations in which relative qualifications can establish a genuine issue of material fact as to pretext: "(1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the [other] applicant over the [plaintiff], or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." *Id.* at 815 (quotation omitted). "In evaluating pretext and the plaintiff's ultimate burden, the court should consider all evidence in the light most favorable to the plaintiff, including the evidence presented in the prima facie stage." *Id.* at 812.

First, Williams had two decades worth of experience at AT&T's Saginaw office. During that time, she had serious success. She was "always in the top 10 percent" of sales. ECF No. 31-2, PageID.316. Sometimes, she maxed out her commissions and Prebay would have Williams put in sales codes for other coworkers who had not yet reached their commission ceiling. ECF No. 31-2, PageID.317. When Williams applied to formally become a sales coach, she had already acted like a sales coach through her position as a "team lead," and she held management responsibilities in the office. *See* ECF No. 31-4, PageID.371.

At summary judgment, AT&T identified very few issues with Williams over her two decades at the company—and none of them were documented. Prebay

13

admitted that Williams "was a very strong performer and she had great sales and was top of the team." ECF No. 31-4, PageID.373. And although Prebay mentioned some issues with Williams's customer service skills, Prebay's testimony was equivocal—Williams "struggled with maybe the way she spoke to a customer" and, at times, her tone "was maybe getting a little negative." ECF No. 31-4, PageID.373.

Meanwhile, Montoya applied with a list of documented violations of AT&T policy. In just two years, he racked up five attendance violations. ECF No. 33-2, PageID.527 (8/28/20); ECF No. 33-3, PageID.530 (1/8/21); ECF No. 33-4, PageID.533 (6/1/21); ECF No. 33-5, PageID.536 (6/24/21); ECF No. 33-6, PageID.539 (8/9/21). He also incurred "a Warning for Gross Customer Abuse/Customer Treatment" from February 2022, ECF No. 33-7, PageID.542.

Unlike Williams, Montoya had no experience with business sales. Though he had worked at AT&T in Florida, his experience was with consumers—not businesses. And he had no experience in the Saginaw office. Though Montoya offered some statistics in his application for the position, they are roughly similar to the markers of Williams's performance.[4]

---

[4] There is a genuine issue of material fact on how well Williams performed at AT&T. On the one hand, Williams testified that she was "always in the top 10 percent" for sales. ECF No. 31-2, PageID.316. On the other hand, Prebay testified that, although Williams "was a strong performer," "there were times that she was under target." ECF No. 31-4, PageID.370. Neither party submitted any non-testimonial evidence about Williams's performance. As for Montoya's performance, his application was internally contradictory on when he achieved certain metrics—on one page he said 2018, on another he said 2021. *Compare* ECF No. 31-7, PageID.417, *with id.* at PageID.421.

Montoya did have some strengths that Williams lacked. He was a college graduate, albeit with an associate's degree. He also already had the title of "sales coach" at his AT&T office in Florida. As to her reasons for hiring Montoya, Prebay testified:

> I selected Jhon Montoya based on his interview, the passion that he showed for sales and the items that he—the products that he excelled in for sales, which were much needed for the sales representative for the Saginaw office to be able to continue to compete with the other offices.

ECF No. 31-4, PageID.383.

Remember that *Provenzano* offers two paths for plaintiffs to establish a genuine issue of material fact on pretext. The first requires evidence that the "plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the [other] applicant over the [plaintiff]." *Provenzano*, 663 F.3d at 815. The second pathway requires evidence that the "plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." *Id.* (citation omitted)

Of course, a reasonable jury could conclude that Williams was more qualified than Montoya. But Williams was not so clearly superior as a candidate that "no reasonable employer" would have selected Montoya. Different employers weigh qualifications in different ways, and Williams was not superior on all relevant metrics. Thus, Williams cannot proceed on the first pathway for establishing a genuine issue of material fact on pretext.

As for the second pathway, however, Williams is on stronger ground—at least for her age discrimination claim under ELCRA. In addition to the evidence that

15

suggested that she was more qualified than Montoya, Williams also provided "other probative evidence of discrimination" with respect to age. *Id.* That is because Prebay told Williams that the "only reason" she did not get the sales coach position was because Prebay "wanted new blood." ECF No. 31-2, PageID.320.

One definition of "new blood" is "people who have just started working . . . somewhere who are energetic, enthusiastic, and often, young." *New blood*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/new-blood [https://perma.cc/SR2J-KME2?type=image] (last visited May 29, 2026). Because of the way that the term can be used, a reasonable jury could find that Prebay's use of the term "new blood" is probative of age-based bias. Probative means "[t]ending to prove or disprove." *Probative*, Black's Law Dictionary (12th ed. 2024). Here, the "new blood" comment does not itself prove that AT&T's rationale is pretextual; it is not direct evidence of discrimination.[5] Even so, when the comment is viewed in the light most favorable to Williams, it tends to prove pretext. Relying on the comment in conjunction with the relative qualifications of the candidates, a jury could find that AT&T discriminated against Williams because of age.

Although Williams offered some probative evidence of age discrimination with the "new blood" comment, she did not offer any evidence of racial discrimination. *See* ECF No. 33, PageID.510–514. She did not provide any evidence to substantiate the

---

[5] Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *DePas v. Stocker & Yale, Inc.*, 94 F. App'x 335, 339 (6th Cir. 2004) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)).

allegation from her complaint that she was stereotyped as an "Angry Black woman." ECF No. 33, PageID.507 (citing ECF No. 1, PageID.13). And without any probative evidence of racial discrimination on top of the relative qualifications evidence, the Court must grant summary judgment in favor of AT&T on Williams's § 1981 claim.

### B. Counterarguments

AT&T advanced some counterarguments to prevent Williams from using the "new blood" comment to create a genuine issue of material fact on pretext for the age discrimination claim under ELCRA. But the Court finds the arguments unpersuasive.

To begin, AT&T cited two age discrimination cases that affirmed grants of summary judgment for employers notwithstanding "new blood" comments—*Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544 (6th Cir. 2004) and *Abnet v. Unifab Corp.*, No. 06-2010, 2009 WL 232998, at *4 (6th Cir. Feb. 3, 2009). ECF No. 31, PageID.291.

In *Rowan*, a uranium enrichment plant laid off two older employees as part of a reduction in force. 360 F.3d at 544. When the employees sued under the ADEA, they pointed to a statement that "the older people should go, bring in some new blood so that they will understand the compliance findings." *Id.* at 549. But the statement was made *seven years* before the layoffs. And the Sixth Circuit noted that the statement itself was pretty "tame" evidence of age discrimination. *Id.* As a result, it held that the evidence was not enough to show pretext. *Id.* at 549–50.

Second, in *Abnet*, a metal fabricator laid off an older employee as part of a reduction in force. No. 06-2010, 2009 WL 232998. When the employee sued under the ADEA, he pointed to comments from a general manager about the need for "new blood" or a "change agent" as evidence of age discrimination. *Id.* at *4. But the Sixth Circuit held that the comments did not raise a genuine issue of material fact on pretext. *Id.* at *5. The opinion did not address any evidence about relative qualifications. *See id.*

Both cases are distinguishable. They predated *Provenzano* and involved reductions in force when the employees had to produce evidence that the purported reason for a firing—financial need—was pretextual. Here, by contrast, the claim involves a failure to promote. In addition, the "new blood" comment in *Rowan* was made seven years before the unlawful employment action. By contrast, here, the connection between Prebay's "new blood" comment and the failure to promote is far more direct— Prebay told Williams that the "only reason" she did not get the sales coach position was because Prebay "wanted new blood." ECF No. 31-2, PageID.320. As for *Abnet*, it simply stands for the proposition that a "new blood" comment, without more, is insufficient evidence of age discrimination—a sensible result. "Courts generally reject the proposition that 'new blood' or equivalent phrases, standing alone, evince age discrimination." *Cronin v. Booz Allen Hamilton Inc.*, No. 21-2085, 2022 WL 3357869, at *4 (3d Cir. Aug. 15, 2022). Williams, however, did not just present the "new blood" comment—she provided additional evidence from which a jury could conclude that AT&T choose the less qualified candidate. Thus, neither case

18

precludes the court from finding that the "new blood" comment, in conjunction with the evidence of relative qualifications, could support a finding of pretext.

Next, AT&T suggested that the Court could ignore the "new blood" comment because Williams testified that she understood "new blood" to mean "someone from outside the call center." ECF No. 31, PageID.291. AT&T did so in a single sentence in its motion for summary judgment, without any legal support. *See id.*

Williams's testimony was arguably contradictory. On the one hand, when Williams was asked about how she was treated differently because of her age, she cited the "new blood" comment. ECF No. 31-2, PageID.331. She did not know whether Prebay was referring to "younger blood or, you know, newer." *Id.* Still, she testified that "that term would strike a person like me that it was something to do with . . . age." *Id.* On the other hand, elsewhere in the deposition, Williams testified that, with the phrase "new blood," Prebay "meant that we needed somebody who was not already seasoned in that center." *Id.* at PageID.320. And she agreed that, ultimately, Prebay wanted a sales coach "from outside the call center." *Id.* But any tension in Williams's testimony does not warrant ignoring probative evidence of age discrimination for three reasons.

*First*, the sole case cited by AT&T for disregarding the "new blood" comment is inapplicable. In its reply brief, AT&T cited *Leary v. Livingston County*, 528 F.3d 438, 444 (6th Cir. 2008). *Leary* held that a plaintiff cannot create a genuine issue of material fact by pointing to allegations in her complaint that contradict her testimony. *Id.* Rather, plaintiffs need "to go beyond the pleadings" at summary

19

judgment. *Celotex Corp.*, 477 U.S. at 324. Here, however, the allegations in the complaint are not the problem; the problem is how to address arguably inconsistent deposition testimony. On that question, AT&T offered no authority for why the Court can ignore the "new blood" comment.[6]

*Second*, Williams's after-the-fact understanding of what Prebay meant has only slight relevance to the ultimate question of whether a reasonable jury could conclude that the phrase "new blood" meant someone younger. And it is certainly not dispositive. At the end of the day, the jury will have to hear the entirety of the evidence and use its common sense to assess the meaning of the phrase.

*Third*, Williams's testimony pointed to by AT&T may not be so contradictory. Recall that Williams testified that, with the phrase "new blood," Prebay "meant that we needed somebody who was not already seasoned in that center." ECF No. 31-2, PageID.320. But needing "*somebody who was not already seasoned* in that center" is different from "somebody who was not already *seasoned in that center*." The former could connote age bias if "seasoned" refers to over-the-hill veterans. The latter could be a preference for making an outside hire if "seasoned" refers to existing employees in the Saginaw office. A reasonable jury could make either conclusion.

---

[6] The sham affidavit doctrine is inapplicable. That doctrine concerns "the admissibility of a post-deposition affidavit at the summary judgment stage." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). It lets district courts strike affidavits that directly contradict prior deposition testimony, unless the non-moving party "provides a persuasive justification for the contradiction." *Id.* Here, however, the allegedly contradictory statements were made in the same deposition—not a latter affidavit.

To conclude, without any legal authority for precluding Williams from arguing that the "new blood" comment is probative evidence of age discrimination, the Court cannot accept AT&T's arguments, especially given the multiple meanings that a jury could give to Williams's testimony—and the Court's obligation to view the record evidence in the light most favorable to Williams.

III.    Remaining Claims

In addition to her claim of age discrimination, Williams brought three other state law claims: constructive discharge, race discrimination, and retaliation—all in violation of the ELCRA. ECF No. 1, PageID.12–15. As discussed above, the racial discrimination claim fails for insufficient evidence. That leaves the ELCRA claims for constructive discharge and retaliation.

"Michigan law recognizes constructive discharge as an adverse employment action." *Agnew v. BASF Corp.*, 286 F.3d 307, 309 (6th Cir. 2002) (citing *Champion v. Nationwide Security, Inc.,* 450 Mich. 702 (1996)). But not every workplace grievance rises to the level of constructive discharge. Rather, constructive discharge occurs only when working conditions are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Jenkins v. Se. Mich. Chapter, Am. Red Cross*, 141 Mich. App. 785, 796 (1985); *see also Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 487 (1994).

Put differently, the work conditions need to be intolerable. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020). Although intolerability can include "demotion, reduction in salary, badgering, harassment, humiliation, and

21

sexual assault," "criticism and negative feedback" are not enough. *Id.* Neither is being "repeatedly passed over for promotions." *Alcala v. Whirlpool Corp.*, 675 F. Supp. 2d 765, 770 (N.D. Ohio 2009).

Thus, to proceed under a constructive discharge theory, Williams would have needed evidence "that 1) [AT&T] deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) [it] did so with the intention of forcing [Williams] to quit." *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014); *see also Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001).[7]

Here, in support of her constructive discharge theory, Williams argued that she was constructively discharged because she did not get a promotion. ECF No. 32, PageID.461. Williams also asserted that she was doing some of the work of a sales coach without the official title. *Id.* And she claimed, without any citation, that she had been denied a promotion thirty-eight times. *Id.* And ultimately, she retired from AT&T because the company did not want to acknowledge her skill set through a promotion. *Id.* (citing ECF No. 31-2, PageID.317).

Setting aside any issues with the lack of citations to the record, being denied a promotion is not enough for a constructive discharge claim. *In re Rodriguez*, 487 F.3d

---

[7] Plaintiff appears to agree that federal caselaw on constructive discharge is not materially different from state caselaw. *See* ECF No. 32, PageID.460–461 (citing federal caselaw to assess constructive discharge under both Title VII and ELCRA). Courts agree. *See, e.g., Yehia v. Mich. Dep't of Corr.*, No. 19-12019, 2020 WL 6393898, at *20 (E.D. Mich. Nov. 2, 2020) (applying federal law to assess constructive discharge under Title VII and ELCRA).

1001, 1011 (6th Cir. 2007) ("[A] plaintiff cannot establish a constructive discharge by claiming, without more, that his employer's failure to promote him to what he perceives as his rightful position created intolerable work conditions." (citation modified)). That is true even if a plaintiff has been passed over for a promotion multiple times. *Alcala*, 675 F. Supp. at  770.

Here, apart from the promotion denials, the only other evidence of constructive discharge that Williams offered is the fact that she did some of the work of a sales coach without the title. But the record also shows that, insofar as Williams did some work of a sales coach as a team lead, she was paid "an extra amount on a daily basis" for being a team lead. ECF No. 31-4, PageID.371. Taking on extra responsibilities and getting paid for them is not intolerable. No reasonable jury could find that the evidence pointed to by Williams suffices for a constructive discharge claim.

Williams also argued that she was retaliated against for participating in a 2018 EEO complaint. ECF No. 32, PageID.462. The details of the complaint are murky. But it appears that Valerie Sebastian—a former AT&T Sales Manager, ECF No. 32, PageID.451—mistakenly believed that Williams filed an anonymous EEO complaint. ECF No. 31-2, PageID.332. In any event, Williams contended that, because she participated in an EEO complaint interview, she was retaliated against. *See* ECF No. 33, PageID.507.

To make out a prima facie case of retaliation in violation of ELCRA, "a plaintiff must show (1) that [s]he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the

plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019) (citation omitted). For the fourth element, a plaintiff needs to show that her "employer took adverse employment action *because of* [her] protected activity." *West v. Gen. Motors Corp.*, 469 Mich. 177, 185 (2003).

Here, AT&T argued that Williams lacked any evidence of a causal connection between protected activity and an adverse action. In response, Williams pointed to her participation in the 2018 EEO complaint. ECF No. 32, PageID.462. Williams appeared to argue that, because of her participation in the internal EEO complaint, AT&T retaliated against her by (1) not promoting her and (2) scrutinizing her and treating her "poorly." *Id.* But there is no evidence that Williams's participation in the 2018 complaint impacted her non-promotion in 2022. *See Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012) ("A lapse of more than two years between the protected activity and the adverse employment action is simply insufficient to show a causal connection based solely on a temporal-proximity theory."); *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) ("[T]his Court has typically found the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity.").[8] As for

---

[8] "The analysis of a retaliation claim brought under the ELCRA 'is identical to the Title VII analysis.'" *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 614 (6th Cir. 2019) (citing *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627 (6th Cir. 2013)); *see also Cox v. Blue Cross Blue Shield of Mich.*, No. 1:12-cv-320, 2013 WL 1838314, at *3–5 (W.D. Mich. May 1, 2013).

Williams's allegation of scrutiny and poor treatment, she simply cited her complaint, which is not enough. ECF No. 32, PageID.462.

Even looking elsewhere in Williams's response, the Court sees no evidence of retaliation with a causal link to the events surrounding the 2018 EEO investigation. In the factual section of her response, Williams cited a portion of her deposition transcript that described how she met with Human Resources after the uncomfortable meeting where the EEO complaint came up. ECF No. 32, PageID.453 (citing ECF No. 31-2, PageID.332). But it is unclear how the meeting with HR supports Williams's retaliation claim. Next, Williams cited some portions of her deposition about how she filed retaliation complaints against Sebastian and Prebay in the aftermath of the uncomfortable meeting. *Id.* (citing ECF No. 31-2, PageID.337). But a complaint filed by Williams is not retaliation by AT&T. Finally, Williams cited testimony that, in 2021, AT&T hired a third-party to investigate her. *Id.* (citing ECF No. 31-2, PageID.321). Again, however, adverse actions by AT&T *three years* after the alleged protected activity are simply too far removed to support any inference of causation. Without any evidence on causation, the Court must grant summary judgment for AT&T on Williams's ELCRA retaliation claim.

## CONCLUSION

To conclude, AT&T is entitled to summary judgment on every claim except for Williams's age discrimination claim under the ELCRA. And even without a federal question remaining in the case, the Court still has jurisdiction. Williams did not explicitly invoke diversity of citizenship as a basis for the Court's jurisdiction, but her

25

complaint did plead facts to support diversity jurisdiction under 28 U.S.C. § 1332. *See Coleman v. Indymac Venture, LLC*, 966 F. Supp. 2d 759, 768–69 (W.D. Tenn. 2013) (finding diversity jurisdiction even with a complaint that did not explicitly invoke diversity jurisdiction). Plaintiff alleged that she is a citizen of Michigan, that AT&T Services, Inc. is incorporated in Delaware, and that the amount in controversy exceeds $100,000. ECF No. 1, PageID.1–2. Other courts have found that "AT&T Services, Inc. is incorporated in Delaware and has its principal place of business in Dallas, Texas." *Calloway v. AT&T Corp.*, No. 18 C 06975, 2019 WL 4694724, at *3 n.5 (N.D. Ill. Sept. 26, 2019). As a result, the Court believes it has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332. *Cf.* 5 *Wright & Miller's Federal Practice & Procedure* § 1214 ("[I]t has been held that the absence of a complete allegation of jurisdiction does not even require amendment of the complaint when the district judge readily can recognize the existence of a federal question or diversity of citizenship and the requisite amount in controversy.").

To avoid any further confusion, however, the Court will permit Williams to file an amended complaint that more clearly invokes the Court's diversity jurisdiction and provides more complete allegations concerning jurisdiction. *See* 28 U.S.C § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). Williams should file the amended complaint no later than fourteen days from the entry of this order. As always, if AT&T has any issues with the Court's assertion of jurisdiction, it should promptly bring them to the Court's attention.

The Court will also require Defendant to file a disclosure statement under Federal Rule of Civil Procedure 7.1. "The statement must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to [Defendant]." Fed. R. Civ. P. 7.1. And the Court will set some trial-related dates. Finally, because Williams's response was docketed as a "motion," ECF No. 32, the Court will deny it as moot.

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment [31] is **GRANTED IN PART AND DENIED IN PART** as discussed above.

**IT IS FURTHER ORDERED** that the so-called "MOTION for summary judgment" [32], which is a really a response, is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Williams may **FILE** an amended complaint to provide more complete allegations concerning the Court's jurisdiction **no later than fourteen days from the entry of this order**.

**IT IS FURTHER ORDERED** that AT&T must **FILE** a disclosure statement under Federal Rule of Civil Procedure 7.1 **no later than fourteen days from the entry of this order**.

**IT IS FURTHER ORDERED** that any motions in limine and trial briefs must be **FILED no later than September 28, 2026**.

**IT IS FURTHER ORDERED** that the final pretrial conference is **SCHEDULED** for **September 30, 2026 at 2:00 p.m.**

**IT IS FURTHER ORDERED** that trial is **SCHEDULED** for **October 13,**

27

**2026**.

 **SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 8, 2026